Morphy, J.
The petitioner represents, that for the term of eight months previous to the 23d of September, 1837, he had engaged with the defendant in a commercial partnership at Tampa Bay, in Florida ; that on that day the partnership was dissolved, and certain articles of dissolution were entered into, whereby the plaintiff was to discharge all the debts due by the firm at Philadelphia, and to pay to the defendant eight thousand dollars in ready money, which sum he has paid ; that in consideration thereof, the defendant transferred and conveyed to him all the effects and property of the partnership, real and personal, rights, credits, &c.; and moreover, bound himself as surety for the faith *97 ful appropriation of certain sums of money sent by the firm to Joshua Burr, the defendant’s brother, and Joseph Burr, Sen., his father, at Philadelphia, to be there used for the benefit of the concern. The petitioner alleges, that of the sums thus sent to Philadelphia, six thousand dollars have been appropriated to the individual benefit of the defendant, instead of being,, used for the business of the firm, a fact which did not come to the plaintiff’s knowledge until the accounts of Joshua Burr and Joseph Burr, Seu., were rendered,' which ^as after the dissolution of the partnership ; and that, by reason of such suretyship and misapplication, the defendant has become bound, and is liable to pay to the plaintiff the said amount of six thousand dollars. The petitioner further alleges, that during the partnership, the defendant used partnership property and funds -for his individual benefit, to the amount of $4000, which he has never accounted for, and which he is bound to refund. The petition concludes by praying for a settlement, and.for judgment for the sum of $L0,000. The answer avers, that when-, the defendant associated himself with the plaintiff,* no special articles of partnership were entered into; that the defendant brought goods, and put into the partnership the sum of $7195 50, and that the plaintiff put in only $1936 05 ; that the partnership was dissolved on the 23d of September, 1837, under articles of dissolution, by which the plaintiff agreed to pay to the defendant $8000, for his share of profits, and for his interest in the stock of goods, debts, real estate, «fee., belonging to the partnership, and assumed to pay the debts due.by the firm. The answer denies, that the defendant has received or taken out from the capital a larger sum than he was entitled to, or that any of his individual debts were paid out of the funds of the firm without the knowledge of the plaintiff, the amount of the same having been charged to the defendant in the books of the partnership kept at Tampa Bay, under the care and inspection of the said plaintiff. The answer claims, in reconvention, $5163 50, for so much paid by the defendant in extinguishment of the Philadelphia debts, which the plaintiff had assumed to pay under the articles of dissolution, and a further sum of $5000 damages, for the suing out of an attachment in this case, which the defendant avers was an oppressive, malicious and unnecessary proceeding, *98 intended to vex and harass him, 'and which has caused him damages to the amount claimed. In a supplemental petition, which makes no mention of the articles of dissolution, the plaintiff sets up a number of claims and charges against the defendant, amounting to about $70,000, and prays for a general settlement of all the partnership concerns, under an agreement entered into between the parties to that effect, and which was annexed to the petition. Two days after, another supplemental petition was filed, in which the plaintiff prays, that the articles of dissolution may be considered as a part of his petition ; that all provisions contained in that instrument may be strictly enforced ; and that no credits or charges be allowed contrary to its stipulations, as the agreement to have a general settlement in this suit was made in reference to the same. The plaintiff further represents, that at the time of the dissolution of the partnership, it was highly important for him to know the amount of the debts due in Philadelphia, as the amount of those debts would materially affect the price he was willing to give for the defendant’s interest in the concern; that the defendant did know the amount of those debts, having managed that part of their business principally, and having at the time but recently returned from Philadelphia; that he accordingly called for information from the defendant, who stated, that those debts did not exceed $4500 ; that with this understanding, he accepted the offer made in the articles of dissolution, bound himself for the debts of the firm in Philadelphia, and paid the defendant the sum of $8000 ; that, therefore, the defendant cannot claim credit for sums paid in Philadelphia, to a greater amount than the aforesaid $4500 ; and that, if debts to a greater amount than said sum be found to exist, the plaintiff, having assumed the payment of them, is entitled to charge the defendant with the excess. The pleadings close with an answer of the defendant to the two last supplemental petitions. He admits, that the agreement therein referred to for a settlement of accounts, was made in reference to the articles of dissolution, and contemplated only such settlement as could be made under them, and ni other. He further avers, that these articles were entered into fairly and honestly on the part of the defendant, for the express purpose of settling the partnership affairs ; that they are final and *99 conclusive respecting all partnership transactions which had occurred previous to their date; and that the plaintiff has no right to make any demand whatever, on matters not reserved for future settlement by the articles of dissolution.
There was a judgment below, in favor of the defendant and plaintiff in reconvention, for the sum of $4868 48. The plaintiff has appealed.
The facts of this case are, in substance, that some time in the beginning of 1837, the plaintiff, having obtained a sutler’s commission for selling goods to the volunteer troops and others at Fort Brooke, in Florida, entered into a partnership with the defendant, who was a merchant doing business, and enjoying good credit in Philadelphia. The purchases were principally made in the latter place by the defendant, Joseph Burr, Senior, his father, and Joshua Burr, his brother, and sent out to the plaintiff, who remained at Tampa Bay, selling the goods, and making remittances to his friends in Philadelphia, from time to time. This partnership lasted about eight months, during which, a large and profitable business appears to have been done. No articles of partnership were drawn up between the parties, and no regular accounts or set of books appear to have been kept.
On the 23d of September, 1837, a dissolution of the 'partnership was agreed to. The difficulty of making a regular settlement of their affairs probably suggested the proposition made by the defendant, of a sale by one of the partners to the other of his interest in the concern. This proposition was reduced to writing in the form of a give or take offer ; and was accepted by the plaintiff, who agreed to become the purchaser of the defendant’s interest in the firm, fpr the sum of $8000 ; to pay all the partnership debts owing in Philadelphia and its vicinity, on or before the 5th of April, 1S38 ; and to give bond and security for the fulfilment of this obligation. It was stipulated, that if either party should, upon a careful examination, be found to have more capital in the concern than the other, the same should be made equal by the latter paying such a sum as should make the capital of both equal. It was further agreed, that should J. Lynch become the purchaser, Joseph Burr, Jr., should hold himself accountable to *100 him for all moneys sent to Philadelphia to his father, or brother, by Burr <fc Lynch, which might not have been appropriated to the benefit of the firm. The articles of dissolution contain other provisions which we may have occasion to advert to hereafter. In accordance with this agreement, Lynch entered into a bond of $9000, conditioned for the payment of the Philadelphia debts, with security to the defendant’s satisfaction. It appears from the pleadings, that at one time it was contemplated, that a general settlement of all the partnership concerns should take place, but that the idea was abandoned ; and the plaintiff himself prayed that the articles of dissolution should be strictly adhered to. Notwithstanding this, he has argued his case, and prepared his evidence, as if the settlement in this suit was to embrace all the affairs of the partnership, without, however, asking to have-the articles of dissolution set aside; thus a mass of irrelevant testimony has been admitted under the loose and improper practice too prevalent in our courts, of receiving any evidence offered, subject to all legal exceptions. The articles of dissolution, we think, settle every thing in relation to the transactions of the partnership previous to their date, and leave open only the questions in relation to the misappropriation of the partnership money in Philadelphia, and the inequality of the capitals put in by each partner. .
Before drawing our attention to these points, the appellant complained, that the inferior Judge totally disregarded testimony offered to prove a guaranty on the part of the defendant that the Philadelphia debts did not exceed $4500. The court, in our opinion, did not err. The articles of dissolution, while they oblige the partner who should become the purchaser to assume the partnership debts, do not limit the amount of those debts; and neither the deed of mortgage, nor the bond executed in pursuance of this clause, mention any such condition or restriction. The proposition of the defendant was in the form of a give or take offer, and would have bound him to the payment of all the debts in the sam,e manner as it binds the plaintiff, had he been the purchaser. The plaintiff knew, moreover, from his invoices, what goods had been purchased. He knew how much money had been sent to Philadelphia; and was probably, quite as capable *101 as the defendant, of estimating the amount of the debts remaining unpaid there. If the funds forwarded had not been faithfully applied, he had guarded against such mis-appropriation. It is worthy of remark, that although all the Philadelphia bills' were sent to the plaintiff shortly after the dissolution, this pretended warranty was never set up or mentioned, except in his last supplemental petition, filed about twenty months after the institution of this suit. The rule, besides, is well settled, that parol evidence is inadmissible against or beyond what is contained in a written agreement, or as to what may have been said before, or at the time of making the same, or since. Civ. Code, art. 2256.
The clause in the articles of dissolution of the 23d of September, 1837, for equalizing the capitals of the two partners, refers evidently to the comparative state they were in at that time ; for it seemed to be a matter of doubt whether there existed any inequality at all, which could not have been the case had the original capital put in by each partner been in contemplation. The plaintiff, who brought this action on the articles of dissolution, does not complain in his petition of any inequality of capital, nor does he claim any thing by reason of such inequality. This agrees with the defendant’s first answer, which, after asserting that the original capital furnished by him amounted to $7195 05, and that of the plaintiff only to $1936 05, admits that he did withdraw certain sums charged to him in his account of capital stock, which left the capitals about equal. An account book of the partnership, the only one produced in evidence, appears to have been used by Lynch for his own affairs after the dissolution. It is blotted and altered in several places, both parties having subsequently made entries in it. So far as its situation in September, 1837, can be ascertained, it shows the original investments to have been as stated above; and the several sums taken by and charged to the defendant, to have amounted to $5335 25.
In addition to the sum of ,$1936 05, shown by the account book to have been put in by the plaintiff, he now claims various other sums, which would swell his capital stock to $4863 05. These items are no where mentioned in the pleadings or the ac *102 count book, with the exception of a sum oí $1000, which he entered on the book after the dissolution. This amount is claimed under a pretended agreement, by which the plaintiff was to have this allowance made to him as a part of his capital stock, for his services in obtaining the sutler’s commission, under which the partnership transacted their business. The testimony in support of this agreement is rather vague and inconclusive. Had such an understanding existed between the partners, this item would probably have been among the first mentioned in the account book, as forming the plaintiff’s investment; but the subsequent entry made in the plaintiff’s own hand-writing, mentions this sum not as one due under any express agreement, but as a claim on a quantum meruit. From the entry itself, and all the evidence in the case, we are satisfied, that the original agreement, if any was made at all on this subject, was, that if Lynch, who was without credit to buy goods, could procure a sutler’s commission to sell to the Alabama volunteers at Fort Brooke, Burr, Jun. who was doing business, and was in good credit at Philadelphia, would join him and procure a stock of goods, by which alone the appointment would be made valuable. The credit of the one in obtaining the goods, was to be an equivalent for the influence of the other in obtaining the commission. This demand is clearly an after-thought. As to the other claims which are not even mentioned in the account book, they are supported by testimony entirely too vague and unsatisfactory. The claim for $307, as an amount contributed in merchandize at Tampa Bay, would, however, appear to be proved by the testimony of H. Van Burén, the clerk of the firm, were his statement not shown to have been made in error, by the plaintiff’s own entries on the books after the dissolution. From these it appears, that the goods or merchandize spoken of, were the remnants of a small adventure, on joint account, between himself and the defendant, made in October, 1836, amounting to $95113. When the partnership was afterwards formed, the remaining goods were mingled with the other merchandize of the new firm ; but the plaintiff was credited on his stock account with $400, and the defendant with $521 13. These sums, which form the original cost of the goods, to wit, $951 13, were the very first items entered *103 on the account book of the partnership, as forming a part of their capital stock. It is evident, then, that the witness was in error in relation to these goods, and the plaintiff cannot have been unaware of such error.
After endeavoring thus to swell by proof, his own investment or capital, the plaintiff has strenuously contested an item of $3410 claimed by the defendant, and included in his capital stock, which he had alleged amounted to $7195 50. This item is made up of certain dry goods which the defendant had brought to Tampa Bay from Philadelphia, and which were the balance of his stock in trade in that city before he went into partnership with the plaintiff. It is contended by the latter, that these goods were never brought into the partnership, but remained until the day of the dissolution the property of the defendant, who, when the articles of settlement and dissolution were drawn up, agreed to sell them to the plaintiff, together with his interest in the concern, ánd that it is for this reason a distinct mention of them is made in that instrument, which mention would have been altogether unnecessary, had they belonged to the partnership. To this it is answered, that the true reason why these goods were specially named in the articles was, that this stock, being in part unsuited to the market and selling at a less profit than the other goods, had been a subject of discussion and dissatisfaction between the partners ; and that the defendant, in making his proposition to dissolve, wished to put an end to this, as well as to all other difficulties, and insisted on their being included in the sale as joint stock, thus putting these goods definitively on the footing of capital invested by him. The arguments offered in support of these adverse constructions, are equally plausible, and the evidence contradictory. We think, however, with the inferior Judge, that it preponderates in favor of the defendant’s position. When these dry goods arrived at Tampa Bay, it is not shown that a separate account was kept of them; but on the contrary, that they were mingled with the other goods of the firm, were sold as occasion offered in the same manner, and the proceeds of the sales entered in the partnership books without any distinction; that the invoice of these goods was placed in the hands of the plaintiff, with the other invoices of goods as they arrived, and by him repeatedly referred *104 to for prices; that Lynch never objected to their being sold as joint stock, and that a portion of them had been so sold at the time of the dissolution. The plaintiff has attempted to account for these facts on the ground of distinct purchases of some of these goods by the firm; but no evidence in the record shows how much was so purchased, how much was sold, or how much remained when the partnership was dissolved. But, independent of these facts, which show that this invoice of dry goods was considered and treated by the plaintiff as partnership property, Lfm articles of dissolution can hardly admit of any other construction. Under the give or take offer of Burr, there would have been a sale, whether Lynch had elected to buy or to sell. If instead of buying, Lynch had chosen to sell, how could it have been said that Burr’s private property was included in the sale of Lynch’s interest in the concern ? Besides, if the dry goods are separated from the joint stock, and supposed to be added as private property, and offered in addition to the joint stock, there would not be in the proposition to buy or sell, that equality which is of its essence. Van Burén, one of the clerks of the firm, made a transcript from the partnership book given in evidence, shortly after the dissolution. This transcript, which exhibils the defendant’s account of stock, shows his investment to have been $7195 50, and the sums charged to him to amount to $5335 25. The contested item of $3410 was then on the book in plaintiff’s possession. It appears to have been blotted out since, on the ground that the entry was made by the defendant a day or two after the dissolution. The witness testifies, that he made this copy in the presence of the plaintiff, who knew that it was intended for his partner ; that he made no objection to it, but directed that two or three small items should be added to the debit side of the account, thus clearly admitting, at that time, that this invoice of dry goods was a part of defendant’s capital. If the $3410, be stricken out of the defendant’s stock account, it makes an inequality in the respective capitals to the whole amount of this large item. As the settlement of the stock account was left open by the articles of dissolution, the plaintiff would surely have made this inequality one of the grounds of his original demand ; but he claimed nothing on that score, and never oven contradicted the assertion in the defendant’s first an *105 swer, that his capital stock amounted originally to §7195 50, although he subsequently thought proper to file two supplemental petitions. We therefore conclude, that the item of §3410, was correctly admitted below.
The sum of §5335 25, with which the defendant’s stock account is debited, shows, that at the time of the dissolution, his original investment was reduced to $1860 25, a sum inferior by $75 75, to that put in by the plaintiff. The amount charged to the defendant on the book, is mainly composed of the several sums of money allowed by the court below as having been paid to, or for the defendant, in Philadelphia, by his brother Joshua Burr, with the partnership funds transmitted to him by the firm, with the exception of an item of §2200, with which, we ihink, the defendant is not chargeable. The evidence shows, that this amount only passed through his hands, and was by him applied to thepayment'of a draft of the firm on Joseph Burr, Sen., for $3100, in favor of Hart, Labatt <fc Co., for the purchase of some goods in New Orleans, iu May, 1837. As to the sum of §500, charged by Joshua Burr, as cash paid to take up an accommodation note of Burr & Lynch held by the Bank of the Northern Liberties in Philadelphia, it was, we think, properly allowed as a claim against the defendant under his warranty, as the note itself, when called for by the plaintiff, was not produced, and no proper evidence was given of its payment. If to this sum be added that of $75 75, the excess of the plaintiff’s capital over that of the defendant, at the time of the dissolution, we find that, in the main action, the defendant stands indebted to his partner in the sum of §575 75.
The reconventional demand which we will now consider, consists of two small debts of the firm, one of $10S 50, and one of $55, paid by the defendant since the dissolution ; and of a sum of $5000, which he claims to have paid to his father on the 26th of July, 1838. As to the two small items, there appears to be no dispute. In relation to the other, the evidence shows that, at the time of the dissolution, the account of Joseph Burr, Sen., exhibited a balance against Burr & Lynch of $8708 90. This account, the correctness of which is fully proved, was sent to New Orleans to be sued on. On the 26th of August, 1838, Burr, Sen., *106 wrote to his counsel here, that he had been paid by the defendant' $5000, and directed that credit should be given for that amount,, and suit be brought for the balance. The only direct and positive evidence of this payment results from the depositions of Burr,Sen., who, it appears was examined by both parties, under separate commissions. Although his relationship to the defendant renders him incompetent, under art. 2260 of our Code, the plaintiff, by using him as a witness, may perhaps be considered as having waived the objection he might have otherwise made. But even without this testimony, the record presents, we think, sufficient proof of this payment. In March, 1840, long after suit liad been brought against Lynch on this account, he paid the balance due on it, $3708 90 ; and to prove this payment in the present suit, he offered the testimony of one Jonathan Patterson, who saw it made, together with a receipted account in full of Joseph Burr, Sen., upon which .this sum of $5000 figures, as having been paid by the defendant on the 26th of July, 1838. By thus discharging the balance due on this bill, the plaintiff clearly acknowledged the truth of the several items of debit and credit which it exhibited. An attempt has been made to show that this sum of $5000 was paid out of the funds of Burr &> Lynch, during the existence of the partnership, and not after its dissolution, and with the defendant’s own money.
The only evidence offered to this point is the declaration of one David Mordecai, formerly in the employ of the firm, that while the defendant was at Tampa Bay, in May, 1837, he told him he had made large remittances to his agents in Philadelphia. This witness does not recollect the precise amount stated ; but says, that he knows it exceeded three thousand dollars: he adds that, to the best of his recollection, it might even have exceeded five thousand dollars. The sworn account of Joshua Burr explains this vague testimony, it shows, that on the 23d of May, and on 9th and 23d June, 1837, he received in Philadelphia through Burr, Sen., remittances from the defendant to an amount exceeding $3000. The plaintiff’s defence to this part of the demand in reconvention, involves an imputation of gross fraud and wilful perjury against the defendant and his father and brother, charges too serious to be supported by the vague recol *107 lections of conversations about remittances which had occurred long before. We, therefore, conclude, that in the main action, the plaintiff is entitled to recover $575 75, which being deducted from the reconveutional claim against him of $5163 50, leaves him indebted to the defendant in the sum of $4587 75.
It is, therefore, ordered, that the judgment of the District Court be so amended, that the defendant, Joseph Burr, do recover of the plaintiff, James Lynch, the sum of $4587 75, instead of $4868 48, with costs below ; those of this court, to be borne by the appellee.