SUCCESSION OF THOMAS DURNFORD—McDONOGH, Curator, Appellant.

Under the Code of 1808, conventional interest could not be recovered, unless the amount had been fixed in writing. Testimonial proof was inadmissible, to prove an agreement to pay such interest. Book 3, tit. 10, art. 32.

Where an authentic act acknowledging a balance to be due, is silent as to the payment of interest, receipts signed by the creditor, acknowledging the payment of instalments of conventional interest " as per agreement," found .among the papers of the debtor after his death, are. not written evidence of an agreement to pay conventional interest on such balance, nor a recognition in writing of any existing agreement to pay it.

The obligation of a vendor, under his warranty, must be determined by the law in force at the time of the sale.

Where a judgment has been rendered in the Supreme Court in favor of the plaintiff, in an action against the purchaser of land instituted by a third person claiming to be its owner, the purchaser must be considered as evicted from the date of the order for the execution of the judgment made in the court below, and the value of the property at that time is the measure of the damages due for the eviction—not its value at any subsequent period when the owner may take actual possession. Code of 1808, book 3, tit. 6, art. 57.

Heirs represented by an attorney of absent heirs appointed by a court, are not heirs " *represented in the State*," within the meaning of art. 122 of the Code of

Practice, which declares, that " all actions may be brought against vacant suc-
cessions, when all the heirs are absent and not represented in the State, provided
they be instituted against the curator." The representation which it contem-
plates is that of an agent, or curator duly appointed ; and when the absent heirs
are not so represented, a judgment rendered against the curator of the vacant
succession, is as valid against the succession as if rendered against the heirs. C.
P. 123. C. C. 1205.

Where the curator of a succession claims in his account rendered to the Probate
Court, an amount as damages for an eviction from land sold to him by the de-
ceased, the allowance of which is opposed by the heirs, that court has jurisdiction
of the questions whether there was a warranty and eviction, and as to the
amount of the damage. A Probate Court may inquire into the title to real es-
tate, when necessary to enforce its admitted jurisdiction. Nor will the fact of
the right to damages being unliquidated, be any obstacle to their being claimed
and allowed in compensation of any amount due by the curator to the succes-
sion. It is not necessary that the damages should have been previously liquida-
ted in an action by the curator against the heirs.

Pleading in compensation should be favored, as it tends to prevent the unnecessa-
ry multiplication of suits.

Appellant, while acting as curator of a vacant succession, was evicted from land
purchased by him from the deceased, and in his account he credited himself with
the amount claimed as damages for the eviction. On an opposition by the heirs,
on the ground of prescription : *Held*, that until they appeared and claimed the
succession the curator was its legal representative, and could not enforce a de-
mand, in his own favor, against it ; and that to the extent of the funds in his
hands, his claim was compensated, and might be opposed to the claims of the
heirs by way of exception, even if incapable of being enforced in a direct action.

APPEAL from the Court of Probates of New Orleans, *Bermu-
dez*, J.

GARLAND, J. In the month of May, 1826, Thomas Durnford
died, and in a short time after, McDonogh, who was a large credi-
tor, became the curator of his vacant succession, and proceeded
to administer it. He, from time to time, presented his accounts
to the Court of Probates, but failed to have them regularly homo-
logated ; but was by the Judge of Probates continued in office
until the early part of the year 1843, when the heirs of Durn-
ford presented themselves, were acknowledged, and called on
the curator to render a final account, which he filed a short
time after, referring to his previous accounts in the Court of Pro-
bates, as a part of, and explanatory of his whole account and ad-
ministration. From these accounts it appears, that McDonogh
had paid all the debts of the succession, except a balance claim-

ed to be due to himself which stood open, amounting to $33,904, 04. These accounts were opposed by the attorney for the absent heirs as being generally incorrect, and particularly, because a fee of $300 was not allowed to him for his services. Shortly after this opposition was filed, the heirs appeared by their counsel, and also filed an opposition generally to all the accounts, with special objections to different items. On the trial of the case, by the withdrawal of the various objections and the admission of many items in the accounts, the matters in dispute were reduced to a few claims.

*A. Hennen,* for the appellant. McDonogh claims damages for eviction from a tract of land purchased from the intestate, Thomas Durnford ; and interest at the rate of ten per cent per annum.

1. The sale was made under the old Civil Code, and therefore, must be governed by its provisions. *Fletcher's Heirs* v. *Cavelier,* 10 La. 116. · The old Code, p. 355, art. 57, gives the increased value of the property, at the time of the eviction, as the rule of damages ; however much increased by time, without the act of the vendee. This rule went beyond the Roman and the French law, and was repealed on the suggestion of the compilers of the new Code. See Projét in English, p. 74 ; in French, p. 308. Touillier, tom. 6, No. 285. Troplong, Vente, Nos. 507, 506. Duranton, tom. 16, No. 295. But it is the rule given also by the Code Napoléon, art. 1633. See 13 La. 143 and 148. *Morris* v. *Abat,* 9 La. 552.

2. When did the eviction take place. Not until the judgment had its effect by the actual dispossession of the vendee, that is, on the sale of the land by the *syndic of DeGruy.* See *Melançon's Heirs* v. *DuHamel,* 7 La. 286. *Fletcher's Heirs* v. *Cavelier,* 10 La. 116. Pothier, Vente, No. 89. *Murray* v. *Bacon,* 7 Mart. N. S. 271. Troplong, Vente, No. 419. 2 Febrero, p. 390, No. 41, and No. 44, part 1, cap. 10. Digest, lib. 21, tit. 2, l. 57, with the notes of Godefroy. Cujas, Recitationes Solemnes in Codicem, lib. 8, tit. 44, 45, De Evictionibus ; in principio, Opera, vol. 9, p. 1211, Gomez, Vari. Resol. cap. 2, De Emptione et Venditione, No. 39.

3. The judgment of eviction against McDonogh is valid and binding on the heirs of Durnford, although they were not notified thereof, nor called in warranty ; because they do not pretend to prove they had any good defence to the suit. Old Civil Code, p. 357, art. 64. Civil Code of 1825, art. 2494. Code Napoléon, art. 1640. The law established by these Codes has existed for more than five hundred years. See Tachinasi Controvertiæ, lib.

2, tit. 37. The decisions of the courts of Louisiana, have given an uniform interpretation to the provisions of the two codes. *Sterling* v. *Fusilier,* 7 Mart. 443. *Johnston* v. *Bell,* 6 Mart. N. S. 384. *Delacroix* v. *Cenas,* 8 Mart. N. S. 356.

4. Interest at ten per cent is claimed by McDonogh, on his account until payment should be allowed; because, by the receipts found among the papers of the succession, it appears, that interest at that rate had been allowed by the intestate. Interest is due by art. 989th of the Code of Practice. *Andrews* v. *Wither's Heirs,* 6 La. 360. Interest once stipulated, continues to run without demand, until the final payment of the principal. *Barbarin* v. *Daniels,* 7 La. 479. Civil Code, art. 1931. "Writing is not of the essence of a convention to pay a particular rate of interest." *Delacroix* v. *Prevost's Exrs.* 6 Mart. 276. Oral evidence only is excluded; interrogatories may be put to the party, or to his executors, to prove the agreement. The *payment of interest* by Durnford is proved by the receipt he held, given by McDonogh. The *presumption* then is clear, that he owed it. If he owed it, then he must have promised it; and if he promised it, then the promise continues until the payment of the principal.

If Durnford had sued McDonogh on these receipts, to repay him the excess of legal interest, no recovery could have been had. But McDonogh, reconvening for his debt and interest at the rate of ten per cent per annum, would certainly have been sustained in his demand. See Mascardus, De Probationibus, Conclusio, 436, 1244, 1325. *Promissio probatnr ex implemento promissi. Solutio præsumitur facta vigore præcedentis obligationis. Causa talis præsumitur, qualis per effectum demonstratur. Probatio efficacissima dicitur quæ per effectum demonstratur. Solutio declarat præcedentem obligationem. Solutionem ex causa præcedenti factam præsumi.*

*Elmore* and *W. W. King,* contra. The court below properly rejected the demand of ten per cent interest. There is no legal proof of an agreement to pay conventional interest. Civil Code, art. 2895. *Poydras* v. *Delamere,* 13 La. 100. 3 Mart. N. S. 185. *Harrod et al* v. *Lafarge,* 12 Mart. 26. The notarial act does not stipulate for any interest. No demand has been proved; consequently no interest was due until after the succession was opened. Code of Pract. art. 989. The date of the last receipt is Oct. 12th, 1824. The succession was opened May, 3d, 1826. The lower court erred in allowing interest for this interval.

The court below properly refused to allow the defendant $21,500 00, as damages for the eviction.

1st. Because, as the heirs were not made parties to the suit for

the eviction, the judgment rendered in that case, is inoperative against them.

The claim set up is a real action (Code of Pract. art. 373,) which must be brought against the heirs in the ordinary tribunals. Ibid. 924, 925, 983. *Everitt* v. *McKinney*, 7 La. 878. *O'Donnegan* v. *Knox*, 11 La. 388. *Gill* v. *Phillips*, 6 Mart. N. S. 305. The action of warranty in the case of eviction is not a personal action for money in the ordinary sense of the term. In every such action the main question to be determined is, whether the vendor conveyed a good title to the vendee. The question of damages is secondary to this. The Court of Probates is not the proper tribunal to pass upon the validity of titles. When a person in possession is sued and calls his vendor in warranty, this latter call is as much a real action as the original suit. The character of the action is not changed by the party's waiting until he is evicted, before suing upon his warranty.

2d. Because this claim is not in a proper position to be maintained in the manner set up by the curator. It should have been liquidated by a suit "*in the ordinary manner.*" Code of Pract. art. 986.

3d. Because the damages claimed are not liquidated, and cannot be set up in compensation of the money collected by the curator. Civil Code, arts. 2205, 2207, s. 2. *Jonau* v. *Ferrand*, 3 Rob. 365. *Fagot et al* v. *Porché*, 7 La. 564.

4th. Because the claim is barred by prescription. Civil Code, art. 3492, 3487, 3422. *Davis' Heirs* v. *Elkins*, 9 La. 135. The curator might have sued by making the attorney for the absent heirs a party. Civil Code, art. 1205. Code of Pract. art. 116. *Poulteney's Heirs* v. *Cecil's Heirs*, 8 La. 421. Prescription began to run from the time when the right of action accrued.

When did the right of action accrue? See Civil Code, art. 2493. Code of Pract. arts. 380, 382.

At all events prescription ran from the date of eviction and is a bar by the lapse of ten years. See *Babin et al.* v. *Winchester*, 7 La. 470. It becomes then material to fix the date of the eviction in this case. It is not absolutely necessary that the party should be evicted by a writ of possession. The party may submit to a judgment. He may give up the possession, without incurring further costs. 10 La. 120. 7 La. 290. 7 Mart. N. S. 271.

Every judgment is a mandate of the court. Such commands are enforced by executions, writs of possession and sometimes by process for a contempt. These remedial writs only become necessary where the party neglects or refuses to comply with the commands of the court. In the case before the court, there is no evidence that McDonogh was ever in possession, or was ever put out of possession. No writ of possession ever issued. If he

was not evicted by his acquiescence in the judgment of the court, he never has been evicted to this day. The presumption is, that he gave up his claims to the place upon the rendition of the judgment.

This voluntary execution of the judgment was the only eviction McDonogh ever sustained. That he did voluntarily execute the judgment is apparent from the fact, that no writ of possession ever issued. The only question is, to determine at what time he thus voluntarily give up his pretensions. In the absence of all proof to the contrary, the reasonable presumption is, that it was immediately after the rendition of the judgment of eviction. If so, the eviction took place in the year 1831.

But there is no evidence that McDonogh ever was in possession of this tract of land. The evidence shows, that it was uncultivated land, and not in the absolute possession of any of the parties.

The property belonged to the estate of De Gruy, and was in the possession of the syndic of that estate at the time of the attempted sale by the sheriff at the suit of Durnford.

The sheriff never made any title to Durnford, nor put him in possession, and Durnford never had any possession under his purchase. The syndic of De Gruy was never ousted of his possession. The sale by the sheriff being illegal, never divested the syndic of his possession. When Durnford transferred to McDonogh, he had no title nor had he possession ; therefore, he transferred neither title nor possession to McDonogh. These conclusions result from the fact, that the lands were not in the immediate possession of any one, and from the law which presumes, that the possession accompanies the title. Civil Code, art. 2455. 1 Mart. N. S. 569. 11 Mart. 640. 6 Mart. 564. 5 Mart. 450.

McDonogh then never had any such possession of the tract as rendered it necessary to oust him by a writ of possession. The judgment of the court which pronounced the invalidity of his title, destroyed his constructive possession, the only possession he ever had. That judgment was rendered in 1831. The claim is barred then by ten years prescription.

GARLAND, J. The first question is, whether McDonogh is a creditor or not. That is, we think, clearly proved by the production of an authentic act, in which a balance of $9763, is acknowledged to be due, by Durnford, under whom the opponents claim. The judge below, therefore, did not err in allowing this sum to the curator.

The next question is, as to interest on the aforesaid sum at the rate of ten per cent, which is claimed by McDonogh. In the no-

tarial act nothing is said about interest, and no written promise to pay it is shown, except, that the curator produces two receipts, signed by himself, dated April 13th, 1824, and October 12th, 1824, which it is proved were found among the papers of Durnford after his death, in which he (McDonogh) acknowledges to have received of Durnford two half yearly instalments of interest on the above mentioned sum, "as per agreement." These receipts, it is contended, amount to an agreement to pay interest at the rate of ten per cent; or are, at least, a recognition in writing of an existing contract to pay it. We cannot regard them in either light. An examination of the terms of the receipts shows, that the agreement to pay interest was a verbal one; for, in acknowledging the receipt of the interest, it is said, it is paid "as per our agreement;" but in describing the debt or sum in which it had been paid, it is said to be on "principal due me from you, as per your acknowledgment in act passed before Mr. De Armas, notary, &c." This debt was contracted whilst the Code of 1808 was in force, which expressly prohibited the recovery of conventional interest, unless the rate was "fixed in writing, and testimonial proof of it is not admitted in any case," Code of 1808, p. 408, art. 32. Such is the provision of the present Civil Code, and our settled jurisprudence. 12 Mart. 21. 7 La. 105. The receipts prove no more than, that up to October, 1824, Durnford was willing to pay interest at the rate of ten per cent; but subsequent to that period they prove nothing. He was not legally bound to pay it; and it is possible he ceased to do so, knowing that he was not bound. The receipts cannot be considered as recognitive acts, as they have none of the legal requisites of such instruments. The judge of the Court of Probates was, therefore, correct, in reducing the rate of interest to five per cent per annum, to commence from the opening of the succession on the 3d of May, 1826, when Durnford died. Code of Pract. art. 989.

The next cause of complaint against the curator is, that he has not collected, or used due diligence to collect a note for upwards of $16,000, made by a Mrs. Bingham or her daughter, to the order of, and endorsed by Valcour Aime. It is said, that the parties to this note were solvent at the time it fell due, and continue to be able to pay; at least, that Aime is so. The history

of this note is somewhat remarkable, and it is shown, that various efforts have been made to recover it. A suit is now pending on it, and the counsel engaged in it say, they see no probable chance of a judgment being obtained. On the part of Aime, it is strenuously urged, that the note was obtained fraudulently. The maker of the note long since became insolvent ; but the situation of the endorser is better than it was when the note matured. By this settlement the heirs will become possessors of this debt; and, as the defendant is able to pay, they can prosecute it to judgment, if they think proper. The whole question is one of fact, and we see nothing to convict the curator of such negligence as will make him liable. The judge below was, in our opinion, correct in overruling the opposition.

The next ground of opposition is, to a charge of $21,500, made by McDonogh against the succession, as damages for a breach of warranty, in the sale of a tract of land on the *Bayou des Familles*. In the year 1823, Durnford sold the land to McDonogh for $4000, with a full warranty. In the year 1830, a suit was instituted by S. Roman, as syndic of the creditors of De Gruy, against Hennen and McDonogh, which was finally decided in favor of the plaintiff, and the defendants lost the land, by a judgment of the District Court of the first district, affirmed by this court, in July, 1831. 2 La. 544. At the time this judgment was rendered, it does not appear that the heirs of Durnford, who now oppose this demand, were in the country, nor had ever made themselves known. They certainly had not made any claim to the succession, which was duly represented by McDonogh, upon whom devolved the defence of the rights of the estate, and also his own, the nominal defendant (Hennen) having disclaimed any title. After the judgment, the syndic of De Gruy took out no process to enforce it, nor to cause himself to be put in possession of the lands until the year 1837, when he sold it at public auction for 21,500, and a person named Hutchinson purchased it, who afterwards sold it to McDonogh. After the judgment in July, 1831, it is not clearly shown whether McDonogh remained in possession of the land, or not. So far as we can ascertain the facts, it is probable there was no actual possession by any one, the land having no improvements on it, except a small cabin and a

few peach trees.   This sum of 21,500, McDonogh claims as the measure of damages, it being, as his counsel contends, the value of the land when he was really evicted, that is, in 1837.

The sale from Durnford to McDonogh, took place before the adoption of the present Civil Code, and the contract of warranty between them must be regulated by the provisions of the Code of 1808, (10 La. 117,) which says, (p. 354, art. 57,) " If, at the time of the eviction, the thing sold has risen in value without the buyer having contributed thereto, the seller is bound to pay him the amount of augmentation of value, above the price of the sale." See also, 10 La. 120.

To ascertain the amount of damages on the warranty, it therefore becomes necessary to fix the time of eviction of McDonogh, from the land.   Eviction, we are told, " is the loss, or deprivation of the buyer of the thing he has bought, in consequence of the right of a third person established in a competent tribunal." Bouvier's Law Dict. verbo, Eviction.   Toml. Law Dict., same word.   It would, therefore, seem, that the date of the rendition of the final judgment, or order to carry it into effect, when it is rendered by this court, is the time of eviction.   The party is then declared to have no title, and he can proceed at once against his warrantor.   The Code of Practice, arts. 385, 386, contemplates the rendition of a judgment against the warrantor, at the same time that a judgment is rendered against the principal ; but, under some circumstances, it is impossible to do it, and the principle we suppose is not changed thereby.   In those cases, where a judgment is rendered, the standard of damages is the value of the thing at the time of the judgment of eviction.   We are, therefore, of opinion, that the date of the recording of the judgment of this court in the District Court, and of the ordering it to be executed, is the proper date at which to fix the time of eviction.

The Judge of Probates in his judgment held, that the judgment of the syndic of De Gruy against Hennen and McDonogh, was not obligatory upon the heirs of Durnford, upon the question of eviction, and upon that ground rejected the demand for the $21,500, being of opinion, that it was necessary for McDonogh to institute a separate action against them to establish and liquidate

mand ; and he relies upon articles 122, 123 of the Code of Prac-
tice, and article 1205 of the Civil Code.   The two first articles
authorize testamentary executors, curators, &c., to appear and de-
fend all actions brought against the successions they administer ;
but in real actions, such as those of revendication and the like,
the action must be brought against the executors and heirs pre-
sent or represented.   It will be observed, that these articles pro-
vide for two kinds of successions, and make some difference be-
tween testamentary and vacant estates.   Article 122 says, that
all kinds of actions may be brought against the curators of vacant
estates, when the heirs are absent and not represented in the State.
By these last words, "*represented in the State*," we do not un-
derstand, that the Legislature meant those heirs represented by
an attorney of absent heirs appointed by the court, but those who
had caused themselves to be represented by an agent, or a curator
duly appointed.   This court has said, that the curator of a vacant
succession is the proper representative of the heirs ; and, that a
judgment against him, in his capacity of curator, is as valid and
efficacious against the succession, as if rendered against the heirs.
3 La. 276.

The next question raised by the counsel for the opponents is,
whether the Court of Probates has jurisdiction of the demand,
as between McDonogh and the heirs.   Upon this point, we have
no doubt.   The action of warranty, though in some degree a
real one, is not an action of revendication, as between the war-
rantor and warrantee, but properly an action on a contract, by
which one party agrees to guarantee another against the damage or
loss that he may incur, in consequence of the title to the thing sold
being found defective or void.   It has frequently been held, that
a Court of Probates may incidentally inquire into titles to real es-
tate, when it is necessary to enforce their admitted jurisdiction.
15 La. 455. In this case no question of title is raised, as between
McDonogh and the heirs.   They do not pretend, that the case of
De Gruy's syndic was not properly defended, nor, that they pos-
sessed, or do now possess, any other means of defeating that ac-
tion, than were used in its defence.   The questions at issue are,
whether there was a warranty, an eviction, and the amount

of damage sustained ; and over them the Court of Probates has jurisdiction.

It is further urged by the counsel for the opponents, that the demand set up by McDonogh cannot be offered in compensation, until it is liquidated by a suit between them. We are unable to see the force of this objection. The demands which the opponents have on McDonogh, are as unliquidated and vague as those he presents, and they may all be examined and settled in this case. If this be not true, it would result in giving the opponents a judgment which they might enforce, obtain possession of the money, and leave McDonogh without the means of satisfying any judgment he might hereafter obtain. The plea of compensation is one that should be favored as far as the law will permit, as it prevents law suits, and enables parties in one suit to adjust many difficulties. As soon as the money belonging to the succession came into the hands of McDonogh as curator, and he made a distribution of it, his debt for that sum was extinguished, and by reference to the account, it will be seen, that the interest ceased upon every payment made.

It is, lastly, urged upon us, that the demand set up is prescribed. Upon this point, we think, the reasoning of the Probate Judge is unanswered ; and we concur in opinion with him, that the plea of prescription must be overruled. Until the heirs appeared and claimed the succession, McDonogh was its legal representative, and could not enforce a demand, in his own favor, against it. It was in fact not necessary for him to do so, to the extent of the funds in his hands, for as to the amount of them his claim was compensated, and whenever the heirs appeared to claim that money, he could oppose his claims by way of exception, although he might not be able to enforce them in a direct action. We cannot permit the heirs to remain quiet for a series of years, and then turn about and attempt to defeat a creditor, who has acted as curator, by a plea of prescription.

It is, therefore, ordered and decreed, that the judgment of the Probate Court be affirmed in all respects, except so far as it relates to the demand of $21,500, set up by McDonogh against the opponents, as the value of the land of which he was evicted by the syndic of De Gruy, and the balance fixed against the curator,

in which respects the judgment is annulled and reversed, and the case remanded for a new trial, for the purpose of ascertaining, by competent testimony, the value of the land sold by Durnford to McDonogh at the time of eviction, as herein fixed, and of stating the account between the parties when said value is ascertained ; the appellees paying the costs of this appeal.*

---

\* *W. W. King*, for a re-hearing. In the argument of the question of prescription as to the claim of McDonogh for damages, it was supposed that the decision would turn upon the date at which the eviction occurred, the counsel for McDonogh contending that it did not occur till 1837, and the counsel of the heirs that it occurred in 1831. This court has decided that the eviction must date from the rendition of the judgment in 1831. If prescription could run, under the circumstances of this case, sufficient time had elapsed to bar the claim of McDonogh. Upon this subject, it is assumed by the court, that " until the heirs appeared and claimed the succession, McDonogh was its legal representative, and could not enforce a demand in his own favor against it." The plea of prescription rests upon the correctness of this position. On behalf of the heirs it is respectfully urged, that McDonogh could have enforced his claim contradictorily with the attorney for the absent heirs ; and that this would have necessarily been the case, had he complied with the requirements of the law for the administration of vacant successions.

By art. 1205 of the Civil Code, the counsel for the absent heirs represents them in all acts required by law to be done. This authority is ample, and he must necessarily act for the heirs and represent them, in contesting all claims brought by the curator against the estate. By art. 1114 of the Code, a creditor is preferred to other persons, for the curatorship. By art. 1183, of the same Code, the curator is bound to render an account of his administration at the end of the year. By art. 1004 of the Code of Practice, objections must be made within three days to the curator's account. The account can be homologated after advertisement.

Now, under these provisions, suppose a creditor to be appointed curator. He is required by art. 1142 of the Civil Code to keep a list of all debts due by the estate, and of course of debts due by the estate to him. At the end of the year he must file his account, showing the payments made by him. Suppose he retains a portion of the money to pay the debt due to himself ; is not this legal ? Could not the judge homologate the account? Most assuredly he could. Not only could this be legally done, but by law it is made his duty thus to render his accounts, including payments to himself as well as to others. The surplus, if there be any in his hands, is to be deposited with the State treasurer. Civil Code, art. 1184. Code of Pract. art. 1009.

The great object a creditor has in view in becoming curator, is to secure the payment of his debt. The law requires that all this shall be done, and the curator's account homologated at the end of one year. This could not be done if the curator could not present any claim against the estate. The law then contemplates that he should present his claim ; and this, whether the heirs appear or not. For if the heirs do not appear, the surplus is to be deposited with the State treasurer. Civil Code, art. 1184. Code of Pract. art. 1009.

Vacant estates are generally administered by creditors. The universal practice in the lower courts is, for them to present their claims against the estate, and they are passed on and homologated contradictorily with the attorney for the absent heirs and the other creditors. Without pursuing this course, it would be impossible ever to settle vacant successions in the manner contemplated by the articles of our Codes above referred to. It is not necessary for the settlement of successions that the heirs should present themselves. If they do not, the money goes into the State treasury.

The attorney for absent heirs, stands in the same relation to the curator, that an

---

under-tutor does to the tutor of minors.  Civil Code, art. 301.  The curator repre-
sents the estate in everything, except where his interests conflict with those of the
heirs.  For such a case was the office of attorney of absent heirs created.

We conclude that the court erred in assuming the position that McDonogh
could not present his claim against the estate. Civil Code, arts. 1146, 1183, 1184.
Code of Pract. 1009.

As McDonogh could have presented his claim, and as it was his duty to have
done so, and he did not, he is barred by prescription.

Prescription runs against all persons, unless they are included in some exception
established by law.  Civil Code, art. 3487.

Prescription runs against a vacant estate, though no curator has been appointed
to such estate.  Civil Code, art. 3492.  If it runs against a vacant estate, it must
also run in favor of a vacant estate.  *Elkins' Heirs* v. *Davis*, 9 La. 136.

The fact is not contested, that McDonogh did not present his claim for dama-
ges against the estate for two years.

                                        *Re-hearing refused.*