| 3   | 255 |
| --- | --- |
| 47  | 508 |

## FREELAND *v.* BRISCOE.

There are no presumptions against sureties; they can only be held to the precise terms of
their obligation.  C. C. 3008.

A surety will be discharged where he cannot, upon payment, be subrogated to the rights of
the creditor.  C. C. 3021, 3022.

A mortgage executed to secure the payment of a judgment stated in it to be the property of
the mortgagee, will be declared void on proof that the judgment did not belong to him.

APPEAL from the District Court of Madison, *Selby,* J.    *Thomas* and
*Snyder,* for the appellant.    *A. Pierse, Stacy* and *Sparrow,* for the defen-
dant.    The judgment of the court was pronounced by

SLIDELL, J.    *Freeland* having obtained an order of seizure and sale upon a
mortgage executed in his favor by *Briscoe,* an injunction was obtained by *Bris-
coe.*    The cases were consolidated, and a judgment having been rendered
which partially sustained and partially rejected the claims of *Freeland, Briscoe*
appealed.

The mortgage which has given rise to this controversy was executed by
*Briccoe,* in 1842, to secure the payment of two alleged judgments obtained by
*Freeland,* one against *John Briscoe* in the United States Court of Louisiana,
for $7,484 80, and interest, and the other against *Bowen,* the surety upon a
note for which *John Briscoe* was the principal debtor, in the Circuit Court of
Claiborne county, Mississippi, for $10,017 00.    It was stated in the mortgage
as the agreement of the parties that, the security given by the mortgage for the
payment of the sums mentioned was received in full discharge of all the securi-
ties in the original notes in which the judgments were obtained.    By the power

FREELAND
v.
BRISCOE.

of attorney annexed to the mortgage *Freeland* states that, the mortgage is to be executed to secure the payment to himself of about $19,000 due to him by *John Briscoe.* At the time of executing this mortgage *Samuel M. Briscoe* transferred to *Wilcox,* the attorney of *Freeland,* who accepted the mortgage for him, two notes of *Amis & Butterworth,* amounting to $3,888, which were imputed in the act of mortgage as a credit upon the alleged judgment rendered in Mississippi.' The petition for injunction charged that the mortgage had been obtained from *Briscoe* through fraud and misrepresentation by *Freeland* and his attorney; that there never had been a judgment rendered in Mississippi in favor of *Freeland* against *Bowen,* as surety of *John Briscoe.* The prayer was, that the whole mortgage be declared a nullity, and for judgment against *Freeland* for the amount of the two notes transferred to him and imputed as a payment upon the Mississippi judgment. There was also an alternative prayer that, if not entitled to full relief, the mortgage might be declared null, so far as it related to the Mississippi judgment, and that the two notes might be imputed as a payment upon the judgment rendered in the United States Court. By a supplemental plea it was farther alleged that, the nullity of the mortgage had become *res judicata* in an antecedent litigation between the parties.

It is conceded that, at the time when the mortgage was executed, the judgment in Mississippi was not in favor of *Freeland, eo nomine,* as stated in the act of mortgage. The judgment was in favor of the Commercial Bank of Rodney. The note upon which it was obtained was once held by *Freeland,* who discounted it at the bank. ' The bank obtained judgment upon it against *Bowen,* nominally the co-obligor, but in reality the surety of *John Briscoe.* The bank also brought suit upon it against *Freeland,* as endorser. That the bank was at one time the holder of the note is conclusively shown, and *Freeland* has failed to show that he has ever paid it, or become the owner of the judgment. That *John Briscoe* desired that *Freeland* should be secured against his liability on the note is satisfactorily shown, and counsel are perhaps warranted in saying that no moral fraud or intentional deception was practised by the mortgagee, or his attorney, upon *Samuel M. Briscoe.* But the mortgage, so far as that claim was concerned, was based upon the alleged existence of a judgment which did not exist; it is not satisfactorily proved that *Samuel M. Briscoe* knew the true state of the case, to wit, that the judgment was owned by the [bank, and that *Freeland* had not paid, nor was the owner of the note. No liability of *Samuel M. Briscoe* for the note of *John Briscoe* and *Bowen,* is proved. He stands in this matter under the evidence, whatever may be the real state of the case, as a voluntary surety for an antecedent liability of *John Briscoe,* by the mortgage of his own lands and slaves.

The law applicable to such a state of evidence is clearly in his favor. The judgment in Mississippi, which he undertook to secure, did not exist, as represented. It was not owned by the party to whom the mortgage was given. There are no presumptions against sureties; they can only be held to the contract as made—to the precise terms of their obligation. *Fidejussio est strictissimi juris, et non durat vel extenditur de re ad rem, de persona ad personam, de tempore ad tempus.* Where the principal's indebtedness does not exist, the collateral contract is a nullity. The representation was that *Freeland* was the plaintiff in the judgment; and the mortgage was to secure its payment to him. But it turns out that he was not the creditor, and, however innocent the representation, the surety cannot be held. The surety is entitled to subrogation upon paying the creditor; but if the mortgagor *Briscoe* should pay *Freeland*

$10,017, *Freeland* could not, so far as the evidence informs us, transfer to him what he represented himself as owning, a judgment against *Bowen*, and the note of *John Briscoe* upon which it was obtained. - See Civil Code, arts. 3008, 3021, 3022.

But it is said that, even though *Freeland* had not paid the note, yet under his liability as endorser he would have had a right to sue *John Briscoe* for an indemnity, and may therefore hold on to an indemnity although irregularly obtained. This may be true; but then it is not shown that *Samuel Briscoe* was liable as principal debtor, and there is therefore no such equity established against him. We are therefore of opinion that the mortgage, so far as it was given to secure the alleged judgment in Mississippi, cannot be declared valid under the evidence presented to us.

There are however circumstances presented by this record, which induce us to leave the rights of the parties open as to the Mississippi judgment and the note upon which it was obtained; especially as the jury refused to restore to *Samuel M. Briscoe* the notes of *Butterworth & Amis*, and sustained the imputation of their amount to the Mississippi judgment. This finding shows that, in the opinion of the jury, *Samuel M. Briscoe* was not a mere volunteer in this matter; and although we do not feel authorized, under the evidence, to affirm the verdict in that particular, it has formed with us a strong inducement to leave the controversy partially open in favor of both litigants, by reserving to *Freeland* whatever rights he may have acquired under the mortgage, or may otherwise have, with regard to the Mississippi judgment and the note upon which it was obtained, and to *Samuel M. Briscoe* his rights, whatever they may be, to the recision *pro tanto* of the mortgage, and the restoration of the notes of *Butterworth & Amis*, or their value.

We would have been disposed to remand the cause upon those points, were it not that the pleadings and proceedings are complicated to a degree which would embarrass the examination of the case.

As regards the plea of *res judicata:* We consider it untenable. To explain all the proceedings which are exhibited by the confused and complicated records before us, and upon which the question of *res judicata* turns, would be an unnecessary waste of time. It suffices to say that, the consent judgment which is pleaded as *res judicata*, expressly refers to the other proceedings than those in the suit in which it was rendered. Interpreted by the recitations contained in it, and by the other suits to which it refers, it is obvious that it was understood by the parties and by the court as a perpetuation of the injunction arresting a prior order of sale, applying merely to the executory proceedings instiuted in the former case, and not concluding the parties upon the issues presented in this cause, and then pending.

It is therefore decreed that the judgment of the court below be reversed; and it is further decreed that the said *Thomas Freeland* be recognized as a mortgage creditor for the sum of $7,484 40, and interest thereon at the rate of ten per centum per annumfrom the 4th day of January, 1840, until paid, upon the lands and slaves described in the act of mortgage, executed on the 19th day of July, 1842, before *Malcolm Wallace*, notary, by said *Samuel M. Briscoe* to said *Thomas Freeland*, of which mortgage a copy is on file in this cause; and that the said lands and slaves be seized and sold to satisfy the said sum, interest, and costs of this suit in the court below; and that the injunction by said *Briscoe* obtained be dissolved. And it is further decreed that, in all

FREELAND
v.
BRISCOE.

other respects, this suit be dismissed as in case of non-suit, and with a full reservation of the rights and liabilities of the said *Samuel M. Briscoe* and the said *Freeland* respectively, with respect to so much of said mortgage as was given to secure the alleged judgment rendered in the Circuit Court of Claiborne county, Mississippi, and with respect to the judgment rendered in Mississippi in favor of the Commercial Bank of Rodney against *Brown*, and with respect to a certain note made by *A. G. Brown* and *John Briscoe* in favor of *J. B. Warren* for $9,333 30, dated 5th May, 1839, being the note more fully described in the record of this cause, and with respect to the two notes of *Amis & Butterworth* mentioned in said act of mortgage. And it is further decreed that the said *Freeland* pay the costs of this appeal.