## TEXAS CO. v. COUVILLON et al. *
### No. 14510.

Court of Appeal of Louisiana. Orleans.
May 22, 1933.

Weiss, Yarrut & Stich and Gerald Netter, all of New Orleans, for appellant.

Sanders, Baldwin, Viosca & Haspel and Robert Weinstein, all of New Orleans, for appellees.

WESTERFIELD, Judge.

Plaintiff alleges that on October 15, 1930, it entered into a written contract with the defendant Adras A. Couvillon, appointing him as its agent at one of its automobile service stations in this city; that under the terms and conditions of the contract, on the same day, plaintiff delivered to defendant 1,000 gallons of gasoline and 30 gallons of motor oil on consignment, the price of the said merchandise not to be due until the termination of the contract between them and at that time to be fixed at the market value as of that date; that the contract terminated on March 26, 1932, on which date the market price of the motor oil was 59 cents a gallon and the gasoline 15 cents a gallon, making the total indebtedness, as per the itemized statement annexed to the petition, $167.70; that on November 17, 1930, the other defendant, George M. Thomas, guaranteed the plaintiff in writing that the above-described merchandise delivered on October 15, 1930, would be paid for by Couvillon. Plaintiff prayed for judgment against the defendants in solido.

Mr. Thomas answered, denying liability, but admitted the execution of the written guaranty, and specially pleaded that he was released from his obligation by the act of the plaintiff in receiving and accepting payments from the defendant Couvillon, in excess of the amount due for the gasoline and oil delivered on October 15, 1930, and that these payments should have been credited in liquidation of the original bill which he guaranteed.

Defendant Couvillon was not cited and failed to appear; the suit being defended by Thomas alone.

There was judgment dismissing the suit as of nonsuit, and plaintiff has appealed.

Thomas was placed on the stand for the purpose of cross-examination, and stated that Couvillon was an acquaintance of his and desired to operate an automobile service station at the corner of Broad and Poydras streets in this city; that Couvillon entered into "the regular agreement" with the Texas Company, appointing him as its agent in charge of the station; that the merchandise in question was delivered to Couvillon, and several days thereafter Couvillon and the salesman for the Texas Company came to him (Thomas), and stated that Couvillon

*Rehearing denied June 12, 1933.

would have to get a guaranty for the initial consignment of gasoline until Couvillon could be put on the credit list; and that, in order to help Couvillon, he signed the guaranty for the initial shipment.

Plaintiff then placed on the stand Mr. O. L. Dell, the assistant credit manager of the plaintiff company, who testified that Couvillon was never placed on the credit list, and that for about eighteen months the company sold and delivered him oil and gasoline on a C. O. D. basis. After having the witness identify the alleged contract between plaintiff and Couvillon, dated October 15, 1930, plaintiff offered it in evidence. Counsel for defendant Thomas objected to its introduction on the ground that Thomas was not a party to it, and, as the written guaranty made no reference to the contract of October 15, 1930, Thomas was in no way bound by its terms and provisions, and hence that document was immaterial and irrelevant to the issues presented. The objection was maintained by the trial judge.

Later this witness was asked the question: "When was the price fixed?" and, before counsel could object, answered: "At the time Mr. Couvillon was relieved as our agent" (March 26, 1932). Counsel for defendant then immediately objected on the following ground: "I object to testimony along that line for the reason that there was nothing in the guaranty to indicate that the price was to be fixed at any time other than at the time this guaranty was to have effect."

Interpreting the guaranty to be an agreement to pay for the initial consignment of the gasoline and the lubricating oil as of the date of delivery, the trial judge sustained the objection.

The guaranty reads as follows:

"New Orleans, La., Nov. 17, 1930.
"The Texas Company, New Orleans, La.

"Gentlemen: I hereby guarantee the payment of the one thousand (1000) gallons of gasoline, and thirty gallons (30) of lubricating oil, which you delivered as the initial consignment to Mr. A. A. Couvillon, at the Diamond T. Service Station, Broad & Poydras Sts., N. O., La.

"It will be further understood that the above amount of merchandise, is all that I am to be responsible for, and only until such time as Mr. Couvillon's name is placed on your credit list.
"Very truly yours,
"[Signed] George M. Thomas."

■ Suretyship is defined by article 3035 of the Revised Civil Code as "an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not." Article 3039, R. C. C., declares that "suretyship can not be presumed" and "it ought to be expressed, and is to be re-

strained within the limits intended by the contract." A contract of suretyship cannot be extended by implication. Stewart v. Levis, 42 La. Ann. 37, 6 So. 898; Wells v. Fidelity & Deposit Co. of Md., 146 La. 169, 83 So. 448.

In Lachman & Jacobi v. Block & Bro., 47 La. Ann. 509, 17 So. 153, 154, 28 L. R. A. 255, the court said: "In ordinary significance, suretyship refers to an existing debt. As the Code puts it, suretyship is the accessory contract of one who binds himself for the debt of another. But it is not to be doubted that under the Code the contract may bind for future as well as existing or past indebtedness. The expansiveness of the Code may be deemed to embrace suretyship in the largest sense; including, of course, the guaranties and bills of credit so familiar in commercial usage. Civ. Code, arts. 3035, 3036; 1 Bouv. Law Dict. 645. But it seems natural, if suretyship was intended to cover past and future indebtedness of the debtor, the purpose would be expressed. One proposing to bind himself as surety for indebtedness future and past, and desiring to be understood, would hardly confine himself with the mere expression of agreeing to become surety, with no indication of the debt intended to be secured. On the other hand, the creditor seeking a surety for existing as well as prospective liability of his debtor would not deem the purpose accomplished by the scant agreement to become surety, with no debt mentioned, future or past. The contention of plaintiffs is, this court is to read into this paper that which is not expressed, and give it the largest significance of suretyship; that is, a suretyship up to $10,000 for the indebtedness, past and future, of Block & Bro. to plaintiffs. It must be borne in mind, too, that the surety is entitled to a strict construction of his contract. He is protected from any interpretation of his contract not resting on clear expression or plain implication. The Code declares that suretyship is not to be presumed, should be expressed, and is to be restricted within the limits intended. Civ. Code, art. 3039; New Orleans Canal & Banking Co. v. Hagan, 1 La. Ann. 62; Freeland v. Briscoe, 3 La. Ann. 257. It seems to us, to make this paper cover past as well as future indebtedness would be to supply by inference that which is neither expressed nor implied."

■ Referring to the terms of the guaranty, we find that Thomas restricted his obligation to the "above amount of merchandise," which "is all that I am to be responsible for, and only until such time as Mr. Couvillon's name is placed on your credit list." Our understanding of this language is that Thomas agreed to guarantee the payment of the purchase price of the initial sale of gasoline and oil only until such time as the plaintiff had an opportunity to determine whether Couvil-

lon was a good credit risk. We do not believe that the language can be fairly interpreted to mean that Thomas was guaranteeing these items for an indefinite period of time, or so long as the plaintiff might see fit to defer action upon the credit responsibility of Couvillon. Under this clause plaintiff was obligated to determine within a reasonable time whether or not it would accept or decline Couvillon as a credit customer. If he was granted credit, Thomas' guaranty was at an end, but, if Couvillon was rejected and failed to pay for the merchandise, Thomas became liable under his guaranty.

As Thomas was not a party to the contract between Couvillon and the plaintiff, he is not bound by any stipulation in that agreement as to how and when the purchase price of the gasoline and oil was to be fixed and paid, because the guaranty does not even refer to that contract. Furthermore, as we interpret the provision in the guaranty limiting it to such time as the plaintiff would have a reasonable opportunity within which to investigate Couvillon's credit standing, and then either accept or reject him as a credit risk, the clause in the contract to the effect that Couvillon was to pay for the merchandise in question at the termination of the agreement is in conflict with and inimical to the provision of the guaranty. In this situation the guaranty would control as between plaintiff and Thomas. Therefore we conclude that the ruling of our learned brother below was correct.

In the present state of the record it is impossible to determine the extent of Thomas' guaranty, because there is no proof as to the price of the gasoline and oil at the time it was purchased by Couvillon and delivered to him.

With reference to the point that the subsequent payments made by Couvillon should be imputed to the liquidation of the claim in question, as being the oldest one, there is not any evidence in the record to indicate the amount of such payments or the circumstances under which they were made. Therefore, without passing upon the legal proposition advanced, we have concluded to remand the case for the purpose of receiving evidence on these issues, to wit: The price of the gasoline and the oil at the time it was delivered to Couvillon and the amounts of subsequent payments by him and the circumstances surrounding those payments.

For the reasons asigned, the judgment appealed from is reversed, and it is now ordered that this case be remanded to the First city court of New Orleans for further proceedings consistent with law and the views herein expressed.

Reversed and remanded.